## 32945. LUMBERMEN'S MUTUAL CASUALTY CO. *et al.* *v.* COWART.

DECIDED APRIL 14, 1950.

*Neely, Marshall & Greene,* for plaintiffs in error.
*R. Beverly Irwin, T. Elton Drake,* contra.

SUTTON, C. J.  This is a workmen's compensation case. On October 13, 1948, the claimant, Ben H. Cowart, was employed by Loew's Inc., and while at work fell from a ladder, sustaining head and back injuries.  He entered into an agreement with his employer and its insurance carrier, Lumbermen's Mutual Casualty Company, dated October 26, 1948, by which it was agreed: "That the said Ben H. Cowart shall receive compensation at the rate of $20 per week based upon a weekly wage of $50 and that said compensation shall be payable from and including the 20th day of October . . 1948 until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of Georgia."  The State Board of Workmen's Compensation approved this agreement.  On November 21, 1948, Cowart returned to work and payments were terminated.

In May, 1949, Cowart applied to the board for a hearing, which was scheduled for June 22, 1949.  All parties were represented at the hearing on this date, and from the evidence adduced the following appears, in substance:  Cowart started

working for Loew's in 1927. His employer operates a theater and in 1935 he was placed in charge of cleaning operations. At the time of the accident he was superintendent of cleaners and was receiving a straight salary of $50 per week for this work, his hours of employment being from 5:30 to 11 a. m. daily. In addition, at various times he worked as a painter for his employer, during his hours of employment as superintendent of cleaners, if he had time, and afterwards, if necessary. If the painting was done during the hours of employment as superintendent of cleaners he was credited with enough hours of time as a painter so as to be paid, in addition to his salary as superintendent of cleaners, the difference in this salary and the union scale for a painter for the time actually spent in painting, and for painting after his regular hours of employment he was paid the union scale for a painter. At the time of the accident the union scale for non-hazardous painting was $1.75 per hour, and it was $2 per hour for hazardous painting, such as work on scaffolds and in high places. On the day of the accident Cowart had just commenced a seasonal painting and clean-up job for his employer, and had worked only part of a day on this work. He was engaged in the hazardous type of painting when he fell from a ladder around 2:15 p. m. During the year 1948 he was paid $50 for every week, except for the five weeks in October and November while he was out on account of his injuries, for which time he was paid $30 per week for four weeks, and $38.56 for another, not including payments under the Workmen's Compensation Law, and in addition he received $8.75 overtime on four different occasions, once in May, twice in August, and once in October. After he returned to work he was able, during 1949, prior to the hearing, to earn and did earn as much as $10 per week over and above his salary of $50 per week, for doing painting that would be classified as non-hazardous. There is evidence to the effect that he is unable to do hazardous painting on account of dizziness as a result of his injury, and evidence to the effect that he has a permanent partial disability, there being a difference of opinion among examining physicians as to the extent of disability, one physician being of the opinion that he was 50% disabled.

The hearing director determined, as a matter of fact, among

other things, that the claimant had two jobs with his employer, one as superintendent of cleaners, at a salary of $50 per week, and another as a painter, at $2 per hour, and that under the provisions of Code § 114-402 (2) his average weekly wages on the date of the injury were $80, i. e., 40 hours per week at $2 per hour, that he was 50% totally disabled, and that on account of the injury he was only able to earn $60 per week, and concluded, as a matter of law, that the claimant should be compensated under the provisions of Code § 114-405. He awarded the claimant compensation for one-half of his loss of earning capacity based on his findings, $10 per week, for a period not exceeding 300 weeks or until a change in condition, to commence as of one week from the date of the accident, and allowed the insurer to take credit for compensation already paid, and made provision for the payment of medical expenses not to exceed the statutory limit. On appeal, the full board and the superior court affirmed the award, and the employer and insurance carrier excepted. There is no controversy as to medical expenses.

One of the contentions of the employer and the insurer is that the amount of the claimant's average weekly wages was conclusively settled by the approval of the board of the agreement between the parties, in which it was stipulated that the weekly wages were $50. In support of this proposition and other similar contentions they cite and rely upon such cases as *Liberty Mutual Ins. Co.* v. *Morgan,* 199 *Ga.* 179 (33 S. E. 2d, 336), *Rourke* v. *United States Fidelity & Guaranty Co.,* 187 *Ga.* 636 (1 S. E. 2d, 728), and *United States Fidelity & Guaranty Co.* v. *Neal,* 58 *Ga. App.* 755 (199 S. E. 846). Also, in the same connection, see *Lumbermen's Mutual Casualty Co.* v. *Cook,* 195 *Ga.* 397 (24 S. E. 2d, 309).

This court, however, is of the opinion that, under the uncontradicted evidence in this case and the law applicable thereto, the claimant was not entitled to any additional compensation, and therefore it is unnecessary to determine the legal effect of the approved agreement as to compensation, in so far as it may conclude the claimant in regard to the amount of wages, or in respect to other matters. Code § 114-402 (Ann. Supp.) provides: "Except as otherwise provided in this Title, the average weekly wages of the injured employee at the time of the

injury shall be taken as the basis upon which to compute compensation and shall be determined, subject to limitations as to the maximum and minimum amounts provided for in sections 114-404 and 114-413, as follows: (1) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the said 13 weeks. (2) If the injured employee shall not have worked in such employment during substantially the whole of 13 weeks immediately preceding the injury, the wages of a similar employee in the same employment who has worked substantially the whole of such 13 weeks shall be used in making the determination under the preceding paragraph. (3) If either of the foregoing methods cannot reasonably and fairly be applied the full time weekly wage of the injured employee shall be used." Code § 114-405 in effect at the time of the injury (it has since been amended as to the amount) provided: "Except as otherwise provided in the next section hereafter [which is not applicable to the present case], where the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such incapacity, a weekly compensation equal to one-half the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than $12 a week, and in no case shall the period covered by such compensation be greater than 300 weeks from the date of the injury. In case the partial incapacity begins after a period of total incapacity, the latter period shall be deducted from the maximum period herein allowed for partial incapacity. The total compensation payable shall in no case exceed $5,000." The term "average weekly wages" as used in the foregoing Code section should be given the same meaning as the definition of the term in Code § 114-402. The ruling in *McBrayer* v. *Columbia Casualty Co.*, 44 *Ga. App.* 59 (160 S. E. 556), in which it was held that the "regular wage" should be the basis for computation is no longer applicable, in view of changes made in the law since that ruling.

It is quite clear from the record that the employment in which the claimant was working at the time of his injury consisted of a full-time job as superintendent of cleaners, at $50 per week, plus part-time employment as a painter, at $2 per hour, and that the part-time employment was irregular and seasonal, and that what he would earn from this work over and above his straight salary depended upon numerous circumstances, depending on the work available and the time he would or could devote to the work. The record of wages paid, as disclosed by the evidence, shows that his average weekly wage in his employment for the 13 weeks preceding the injury was $52.02, taking into consideration the $26.25 overtime during the period, in addition to his weekly salary of $50. In view of this evidence the hearing director was not authorized to find as a fact, by applying the provisions of Code § 114-402 (2) to the evidence, that his average weekly wages were $80, that is, that as a painter he would earn $2 per hour for 40 hours a week, but instead he should have determined his average weekly wages prior to the accident based on his actual earnings and the provisions of Code § 114-402 (1), and if determined in this manner the claimant's average weekly wages prior to the injury were in fact $52.02. After recovering from total disability it was shown that the claimant had been able to earn as much as $10 per week over and above his salary of $50 per week, and the finding to the effect that he was able to earn as much as $60 per week after his injury was authorized. Under the provisions of Code § 114-405 compensation would be allowable only in the event it could be determined that there was a loss in earning capacity based on "the difference between his average weekly wages before the injury and the average weekly wage which he is able to earn thereafter," the amount allowable being one-half of this amount, subject to certain limitations. No compensable loss under this Code section is shown under any authorized finding of fact, and it follows that the award to the claimant of $10 per week under the provisions of this section was not authorized as a matter of law, and the judge of the superior court erred in affirming the award.

*Judgment reversed. Felton and Worrill, JJ., concur.*