45487.   GEORGIA CASUALTY & SURETY COMPANY et al.
v. SPELLER.

DEEN, Judge. 1. Industrial blindness and deafness, that is, a loss of use of the member which renders it too ineffective for use for industrial purposes, is for workmen's compensation purposes to be considered as a total loss of use of the eye or ear. *Shipman v. Employers Mut. Liab. Ins. Co.,* 105 Ga. App. 487, 493 (125 SE2d 72); *Davis v. Cobb County,* 106 Ga. App. 336 (1b) (126 SE2d 710).

2. The appellant urges that this case is controlled by *Ga. Cas. &c. Co. v. Wesby,* 119 Ga. App. 545 (168 SS2d 191), and *Dunn v. Hartford Acc. & Indem. Co.,* 81 Ga. App. 283 (58 SE2d 245), and that we must as a matter of law hold that the disability to an eye must be measured by the difference between corrected

vision after the accident. This is only partly true. The *Dunn* case (p. 289) emphasized that the court was not holding "that where an employee suffers the loss of a part of his vision which may be restored [by glasses] that he has lost nothing." In that case the claimant wore glasses and had been previously compensated for some loss of use resulting from a previous industrial accident. *Wesby* held: "If the employee may take advantage of the fact that his vision was almost normal with glasses on before injury, then it follows that the employer may take advantage of the same fact after the injury occurs." In *Wesby* close examination of both the opinion and the original record reveals that no information was provided for either the board or the reviewing courts as to whether the claimant wore glasses prior to the injury. We therefore interpret these cases as holding: (1) each case must be considered on its own facts, (2) the hearing director is not precluded from granting compensation in some amount even though total correction may be achieved by glasses, and (3) where the claimant was wearing glasses and had some vision both before and after injury, the measure of disability should be taken on the basis of corrected vision before and corrected vision after, with some modification allowable merely by reason of the loss, but without any yardstick provided for the modification procedure. Viewed in this light, we have no binding precedent where the claimant had perfect vision and was not wearing glasses until the injury, and where after injury he is, without glasses, industrially blind. It is true that in *Dunn* the court discussed a previous injury before the one involved in that case, but it also stated that the sole question before it was the amount of compensation due on the second injury. The argument that if there were a second injury to Speller's left eye he would collect more than the amount provided by statute for loss of an eye is refuted by *American Mut. Liab. Ins. Co. v. Brock,* 165 Ga. 771 (142 SE 101) and later cases. In any event, and no matter how many times a specific member is injured, the claimant cannot recover a total of more than 100% disability or charge the employer with a greater percentage of disability than that attributable to the injury for which an award is sought. *Code* § 114-408; *Gen-*

*eral Motors Corp. v. Hargis,* 114 Ga. App. 143 (150 SE2d 303); *Wisham v. Employers Liab. Assur. Corp.,* 55 Ga. App. 778 (191 SE 489).

3. In the present case the claimant had 20/20 vision in both eyes before his accident. After the accident he had 20/200 vision in his left eye without glasses; that is, he was industrially blind in his left eye. Glasses can bring this vision up to 20/50. The necessity of wearing glasses, where the claimant had perfect vision prior to the accident, is itself a disability, and the corrected-vision formula cannot be applied in such a case. For one thing, there is a considerable loss of peripheral vision which the glasses obviously do not restore, and for another there is whatever disability is inherent in the use of any prosthetic device.

The award of disability based on industrial blindness, or 100% industrial loss of use to the left eye was entered by the deputy director, and affirmed by the full board and by the judge of the superior court who had previously remanded the case with instructions that the board consider the amount to which vision in the left eye could be increased by the use of glasses. We consider the rationale of the *Dunn* and *Wesby* cases to be that it is unfair to oppose corrected vision before the accident to uncorrected vision after the accident, where the claimant was wearing glasses on both occasions. It logically follows that where the claimant was not wearing glasses, the uncorrected vision before and after affords a proper yardstick, susceptible to modification by the board where there are other special facts influencing the determination of the degree of disability, such as whether, even though the claimant was not wearing glasses, his sight was in fact defective. No such special facts appear here. The award is therefore

*Affirmed. Hall, P. J., and Evans, J., concur.*
ARGUED JULY 10, 1970—DECIDED SEPTEMBER 15, 1970.

*Quillian & Quillian, Alfred A. Quillian,* for appellants.
*Bobby F. Herndon,* for appellee.